COCKE *et al. v.* BANK OF DAWSON.

No. 10654. JUNE 13, 1935.

*W. L. Ferguson, H. A. Wilkinson,* and *Henry A. Wilkinson Jr.,* for plaintiffs.

*M. C. Edwards* and *Tom Edwards,* for defendant.

BELL, Justice. J. F. Cocke Jr., J. E. Cocke, C. D. Cocke, S. M. Cocke, and Mrs. J. B. Hoyl filed a suit against the Bank of Dawson, to enjoin the sale of described real estate situated in Terrell county and known as the Marlin place, which the bank was advertising and proposing to sell in accordance with a security deed with a power of sale claimed by it to have been executed by two of the plaintiffs in behalf of themselves personally and in behalf of the others as attorneys in fact. The judge refused an interlocutory injunction, and the plaintiffs excepted.

The following facts appeared from the pleadings and the evidence: Plaintiffs were the heirs at law of J. F. Cocke Sr., who died intestate in the year 1928, seized of the lands in question. On December 31, 1928, three of the heirs, Mrs. Hoyl, S. M. Cocke,

and J. E. Cocke, executed a power of attorney to the other two, namely, C. D. Cocke and J. F. Cocke, authorizing them to operate, conduct, and manage the farms inherited from their father in Terrell and Lee counties, Georgia, for the purpose of paying the debts of the intestate and of carrying on such business until the settlement and distribution of the estate, and to "have, use and take all lawful ways and means, in our names or otherwise, that may be found necessary, or proper in the execution of this power of attorney." The instrument also contained the following: "We further authorize and empower our attorneys in fact, C. D. Cocke and Julian F. Cocke, to make, sign, seal, and deliver notes, mortgages, and deeds to any or all of said property, both real and personal, belonging to said estate, for the purpose of carrying out the business above mentioned. We empower them to borrow money or other articles necessary, and encumber any of said property they may see fit, for that purpose; and we authorize said attorneys in fact to pay off any and all obligations thus incurred, and for us and in our names to sign and deliver such papers." The deed under which the bank was attempting to sell the property was executed on March 7, 1932, as security for a note of the same date for the sum of $981.28. In the body of this deed the only grantor designated by name was "C. D. Cocke, attorney in fact for heirs of J. F. Cocke estate," but in subsequent clauses there was language to indicate an intention to include other persons as grantors; as for instance: "that we will keep fire insurance upon the buildings," "that we will keep all taxes paid;" "we hereby constitute the said grantee or its assigns of the debt hereby secured as attorney in fact for us and in our name," upon default, to sell the property upon terms stated, and it "may in our names make title to the purchaser, thereby divesting out of us all the title and interest in the same," and the balance of the purchase money, if any, after defraying expenses of sale, "shall be paid over to us or to our legal representatives or assigns." The attesting clause and signature were as follows: "In witness whereof, the said C. D. Cocke, attorney in fact, for the heirs of J. F. Cocke, have hereunto set his hand and affixed his seal, the day first above written. [Signed] J. F. Cocke estate. By: C. D. Cocke, attorney in fact. (LS)." The note for which the deed was given as security was due September 7, 1932, was signed "J. F. Cocke estate, by J. F.

Cocke, C. D. Cocke, attorney in fact," and contained the following recital: "And to secure the payment of the indebtedness evidenced by this note, or any renewal or extension of same, and any or all other indebtedness or liability, either direct or indirect, which the maker or makers hereof may now or hereafter owe the payee or assigns of this note, I or we do hereby sell, transfer, assign, pledge, and deposit the following described property, to wit: security deed 200 acres land, more or less, known as Marlin place." The note was executed under seal. The advertisement of the proposed sale, a copy of which was attached as an exhibit to the petition, referred to the security deed as having been made "by J. F. Cocke estate by its attorneys in fact," without further designation of grantors. It did not appear from the advertisement that the deed had been recorded, or who were the attorneys in fact.

In their petition the plaintiffs made the following contentions: (1) Petitioner J. F. Cocke did not execute the power of attorney, and did not sign or execute the security deed; and for this reason the proposed sale would be void as to him. (2) The power of attorney was addressed both to C. D. Cocke and J. F. Cocke as joint attorneys in fact, and did not authorize the execution of a security deed by C. D. Cocke alone as attorney in fact. (3) The power of attorney was insufficient in law to authorize the execution of any security deed, granting no specific authority and power to execute such an instrument. (4) It did not authorize the signing of a security deed which included a power of sale, and the deed amounted to the personal act of C. D. Cocke only. (5) Finally, the advertisement was insufficient, in referring to the property as that of the "J. F. Cocke estate." The petition alleged that for these reasons the security deed was null and void and the contemplated sale would also be void. The bank contends, among other things, that while the deed was signed only by C. D. Cocke, the note was executed both by him and J. F. Cocke, these being the persons named as attorneys in fact, and that in view of the recital contained in the note with reference to this land the security deed should be considered as having been executed by both of the attorneys in fact, and should be treated in equity as the deed of all the plaintiffs. Also, the answer of the bank was introduced in evidence, and contained the following allegation: It was the intent and purpose of the heirs of J. F. Cocke Sr. to keep the estate together

and operate it, and they did keep it together and operate it, under the name of J. F. Cocke estate, said "J. F. Cocke estate" being a farm partnership consisting .of the plaintiffs as members. The purpose of the power of attorney "was to obtain money credit to operate said farms from Bank of Dawson with the full knowledge and consent of all the heirs. At that time C. D. Cocke was cashier of the Bank of Dawson and handled many of these loans, renewed them himself, without consulting any of the bank officials, with the full knowledge and consent of the plaintiffs in this case. Beginning at the date of this power they made, executed, and delivered many notes, mortgages, security deeds to Bank of Dawson, borrowed and used much .of its funds, and became heavily indebted to Bank of Dawson far in excess of the wishes of the Bank of Dawson; all of said acts being done by C. D. Cocke, J. F. Cocke, and with the knowledge and consent of all heirs at law, who received benefit from the power beginning 1929, up to date of this petition. . . During some of that time Julian F. Cocke was engaged in traveling in other sections for a commercial line, and C. D. Cocke would make papers acting under said power, and Julian F. Cocke would thereafter ratify same at all times. That it was not the intention or purpose of the plaintiffs that both of the attorneys in fact should sign each and every paper. Defendant says that while the particular security deed was signed by C. D. Cocke, he signed the name of J. F. Cocke estate and specified the note which it was made to secure. The note which it was made to secure was signed by J. F. Cocke and C. D. Cocke, attorneys in fact, and named the security deed referred to in this suit, both being identical; the note described in the deed and the deed described in the note being the two named in two said papers. Defendant says, therefore, that both J. F. Cocke and C. D. Cocke executed papers joint as attorneys in fact; that J. F. Cocke estate, meaning all of plaintiffs named in said case, are liable on the deed and notes named therein. . . Plaintiffs used part of the funds obtained on these and other loans to pay interest and other payments on loan held by the Mutual Benefit Life Insurance Company, and against this particular land."

■ The contentions made in the briefs expanded to some extent the express averments of the petition, but not those impliedly made therein. Accordingly, each question discussed in the briefs will

be considered, so far as necessary to a decision. There is no merit in the contention that the security deed was not executed jointly by C. D. Cocke and J. F. Cocke as attorneys in fact. While the deed itself was signed only by the former, the note was signed by both. The note and the security deed constituted a single contract, and both were executed under seal. The note recited, in effect, that it was secured by a deed to the Marlin place, and, as between the parties and in equity, the signature of J. F. Cocke as attorney in fact to this instrument should be treated as applying to the whole contract, including the part contained in the security deed. *Montgomery* v. *Hunt,* 93 *Ga.* 438 (2) (21 S. E. 59); *Guinn* v. *Marshall,* 156 *Ga.* 480 (2) (119 S. E. 397); *Georgia National Bank* v. *Reese,* 156 *Ga.* 652 (119 S. E. 610); *Dyal* v. *Foy,* 159 *Ga.* 848 (2) (126 S. E. 783); *Horn* v. *Evans,* 31 *Ga. App.* 370 (2) (120 S. E. 787); *Gilford* v. *Green,* 33 *Ga. App.* 1 (125 S. E. 80). "No prescribed form is essential to the validity of a deed to lands or personalty. If sufficient in itself to make known the transaction between the parties, no want of form will invalidate it." Code of 1933, § 29-104. In mere matter of form, and in favor of a creditor, equity may aid a defective execution of a power. 49 C. J. 1304, §§ 147, 148. It follows that the note and the security deed considered together should be regarded as the joint act of the two attorneys in fact, who purported to sign not only for themselves but for all of the heirs of J. F. Cocke Sr.

■ When the security deed is considered as a whole, it does not appear to be the personal act of C. D. Cocke alone, nor when the deed and the note are taken together can it be said that the entire contract, as thus constituted, should be construed as a conveyance only by C. D. Cocke and J. F. Cocke as individuals. "An instrument signed by one as agent, trustee, guardian, administrator, executor, or the like, without more, shall be the individual undertaking of the maker, such words being generally words of description." Code of 1933, § 4-401. But this was not an instrument signed by C. D. Cocke and J. F. Cocke as attorneys in fact, *without more.* The language of the deed, and all of it must be considered. Also the attendant circumstances may be proved. Code of 1933, § 20-704, par. 1. A deed may be valid as against one who signs and delivers it, although he is not designated in the body of the deed as grantor. *Sterling* v. *Park,* 129 *Ga.* 309 (58 S. E.

828, 13 L. R. A. (N. S.) 298, 121 Am. St. R. 224, 12 Ann. Cas. 201). Whether or not this rule would apply to a deed signed by one as attorney in fact, the deed here under consideration contained a reference to other parties as grantors, namely, the "heirs of J. F. Cocke estate." The pleadings and the evidence show that this language refers to the estate of J. F. Cocke Sr., and that these plaintiffs were the "heirs." The deed also contains the expressions "we," "us," "in our names," and "our legal representatives." It is signed, "J. F. Cocke estate." The word "estate," if unexplained, would not designate any persons or person, but in this case it is apparent from the context and the other facts and circumstances that the word was used to designate the heirs at law of J. F. Cocke Sr., and as a signature for them. Cf. *United States Fidelity &c. Co.* v. *Newton,* 37 *Ga. App.* 70 (139 S. E. 365). In *Peeples* v. *Rudulph,* 153 *Ga.* 17 (7) (111 S. E. 548), this court had before it a deed "to the heirs at law" of a named person; and it was held that these words, "when used in a deed to designate the grantees, will be interpreted to mean the persons appointed by law to succeed to real estate in case of intestacy, unless a different interpretation is required in order to give effect to the plain purpose and intention of the grantor, as disclosed by the language of the deed as a whole." In *Farrar Lumber Co.* v. *Brindle,* 170 *Ga.* 37 (4) (151 S. E. 923), it was said: "A writing purporting to convey land 'to the heirs of' a named person, where that person is dead and the heirs are ascertainable, is not void upon the ground that 'it does not show and does not describe the grantees;' for if there are persons ascertainable who are the heirs of the person named, parol evidence would be admissible to establish their identity." There is no reason why the same rule should not apply as to grantors. We have seen that no prescribed form is essential to the validity of a deed to lands or personalty. It is also the law that "the form in which the agent acts is immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." Code of 1933, § 4-304. The attorneys in fact were expressly authorized by this power of attorney to execute it in the names of the principals "or otherwise." Under the facts of this case, the security deed should be construed to be a conveyance by C. D. Cocke and J. F. Cocke in behalf of themselves and as attorneys in fact for the other heirs at law of

their father, J. F. Cocke Sr.   *Florida Central & Peninsular R. Co.* v. *Usina,* 111 *Ga.* 697 (36 S. E. 928) ; *Payton* v. *McPhaul,* 128 *Ga.* 510 (3) (58 S. E. 50, 11 Ann. Cas. 163) ; *Sapp* v. *Cline,* 131 *Ga.* 433 (62 S. E. 529) ; *Raleigh & Gaston Railroad Co.* v. *Pullman Co.,* 122 *Ga.* 700 (9) (50 S. E. 1008) ; *Fleck* v. *Ellis,* 144 *Ga.* 732 (87 S. E. 1055) ; *Miller* v. *Hines,* 145 *Ga.* 616 (3) (89 S. E. 689) ; *McRitchie* v. *Atlanta Trust Co.,* 170 *Ga.* 296 (3) (152 S. E. 834) ; 2 C. J. 671, § 323.

■   The language of the power here involved has been noted in the foregoing statement, and we think it was sufficient to authorize the execution of the security deed in question.   In *Fletcher* v. *American Trust & Banking Co.,* 111 *Ga.* 300, 302 (36 S. E. 767, 78 Am. St. R. 164), it was said: "It is a well-recognized principle of law, that where power is given to raise or borrow money, the power to secure the loan is necessarily implied.   The will having given power to the executor to raise money to pay the debts of the estate, he had also the power to secure the loan by deed or mortgage.   Otherwise, he might have been unable to successfully execute the power expressly given him by the will.   The executor had, therefore, not only the power to raise money for the purpose of paying the debts of his testatrix, but also the power to secure the loan by deed or mortgage."   See also *Touchstone* v. *Gormley,* 178 *Ga.* 130, 134 (172 S. E. 335).   It is not a valid objection that the security deed and note were sealed instruments, the power of attorney having been executed under seal and having conferred express authority as to a class of transactions which included these instruments.   The present case differs on its facts from cases like *Born* v. *Simmons,* 111 *Ga.* 869 (36 S. E. 956) ; *Exchange Bank* v. *Thrower,* 118 *Ga.* 433 (45 S. E. 316) ; *United Leather Co.* v. *Proudfit,* 151 *Ga.* 403 (107 S. E. 327) ; *Harp* v. *First National Bank,* 173 *Ga.* 768 (2) (161 S. E. 355) ; *Hargrove* v. *Armour Fertilizer Works,* 31 *Ga. App.* 465 (120 S. E. 800).

■   What is said in the preceding division is not altered by the fact that the security deed contained a power of sale, nor by the further fact that in conveying the legal title it necessarily waived the right of homestead.   One having power to execute a security deed has the incidental authority to include such terms and conditions as are usually inserted in such instruments, including the power to sell in case of default; and the power to execute such a

deed embraced, as a matter of law, an agency to convey the legal title, potentially waiving the right of homestead. See *Fletcher* v. *American Trust Co.,* and *Touchstone* v. *Gormley,* supra. See also 2 C. J. 651, § 296. The terms of this security deed were such as are commonly found in such instruments.

█ The rulings stated above will dispose of all contentions adversely to the plaintiffs in error, except that concerning the advertisement. Upon that question we are constrained to hold that the judge should have granted an injunction. The advertisement did not state sufficient facts to show a valid security deed. The advertisement referred to the deed as having been made by "J. F. Cocke estate by its attorneys in fact," without otherwise identifying the grantors, or even showing a legal entity as grantor. It did not show that the deed had been recorded, or who were the attorneys in fact. In the circumstances, a prospective purchaser in the exercise of ordinary prudence should have had a doubt as to the validity of the proposed sale, and might have been deterred from buying. There was nothing to indicate a valid security deed, such as it finally appeared to be under the facts disclosed at the hearing for injunction. A power of sale in a security deed must be fairly exercised; and from the language of this advertisement, without more, it appeared that the security deed was void for the want of a legal grantor. The sale might have been chilled by this circumstance, and it should have been enjoined until better advertised. Code of 1933, § 37-607; *Sims* v. *Etheridge,* 169 *Ga.* 400 (4) (150 S. E. 647); *Plainville Brick Co.* v. *Williams,* 170 *Ga.* 75 (2) (152 S. E. 85); *Penn Mutual Life Ins. Co.* v. *Donalson,* 177 *Ga.* 84, 90 (169 S. E. 337). The case is different from *Universal Chain &c. Inc.* v. *Oldknow,* 176 *Ga.* 492 (2) (168 S. E. 239), as will be readily seen upon examination of that case.

*Judgment reversed. All the Justices concur.*